# In the United States Court of Federal Claims

BID PROTEST
No. 17-1115C
Filed Under Seal: October 18, 2017
Reissued for Publication: October 30, 2017[*]

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Pre-Award Bid Protest; Competition in |
| v. ) | Contracting Act ("CICA"); 41 U.S.C. § |
| ) | 3304; FAR § 1.704; FAR § 6.302-7; |
| THE UNITED STATES, ) | Judgment on the Administrative Record; |
| ) | RCFC 52.1; Injunctive Relief; RCFC 65; |
| Defendant, ) | Supplementing the Administrative |
| ) | Record; Standing; Subject-Matter |
| v. ) | Jurisdiction; RCFC 12(b)(1). |
| ) | |
| CERNER CORPORATION, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

*Richard J.R. Raleigh, Jr.*, Counsel of Record, *Jerome S. Gabig*, *Christopher L. Lockwood*, Wilmer & Lee, P.A., Huntsville, AL, for plaintiff.

*William P. Rayel*, Senior Trial Counsel, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Mike Kraycinovich*, Of Counsel, *Frank DiNicola*, Of Counsel, United States Department of Veterans Affairs, for defendant.

*David Hazelton*, Counsel of Record, *Anne W. Robinson*, Of Counsel, *Kyle R. Jefcoat*, Of Counsel, *Dean W. Baxtresser*, Of Counsel, *Morgan L. Maddoux*, Of Counsel, Latham & Watkins LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on October 18, 2017 (docket entry no. 52). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on October 27, 2017 (docket entry no. 60) proposing certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order dated October 18, 2017, with the agreed upon redactions indicated by three consecutive asterisks within brackets ([***]).

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>GRIGGSBY, Judge</u>

## I.   INTRODUCTION

Plaintiff, CliniComp International, Inc. ("CliniComp"), brought this pre-award bid protest matter seeking to enjoin the Secretary of Veterans Affairs (the "Secretary") from directly soliciting a sole source contract to Cerner Corporation ("Cerner") for the next generation electronic health records ("EHR") system for the United States Department of Veterans Affairs (the "VA"), pursuant to the public interest exception to the Competition in Contracting Act ("CICA").  CliniComp has moved for preliminary and permanent injunctions, pursuant to Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Pl. Mot. The government and Cerner have also moved to dismiss this matter for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1).  *See generally* Def. XMJAR; Int. XMJAR.

In addition, the parties have filed cross-motions for judgment on the administrative record, pursuant to RCFC 52.1.  *See generally* Pl. MJAR; Def. XMJAR; Int. XMJAR. CliniComp has also moved to strike several documents attached to Cerner's motion to dismiss and three citations contained in the government's motions to dismiss and for judgment on the administrative record, and to amend its motion to strike.  *See generally* Pl. Mot. to Strike; Pl. Mot. to Amend; Def. XMJAR at 21-22, 46.  Lastly, Cerner and CliniComp have moved for leave to file supplemental briefs.  *See generally* Int. Mot. to Supp.; Pl. Mot. to Supp.

For the reasons discussed below, the Court **GRANTS** CliniComp's motions to strike and to amend its motion to strike; **GRANTS** the government's and Cerner's respective motions to dismiss this matter for lack of subject-matter jurisdiction; **DENIES** as moot the parties' cross-motions for judgment on the administrative record; **DENIES** CliniComp's motion for preliminary and permanent injunctions; and **DENIES** Cerner's and CliniComp's respective motions for leave to file supplemental briefs.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

CliniComp is headquartered in San Diego, California, and the company is a global provider of hardware, software, and support for clinical documentation systems.  Compl. Ex. 10 at 1.  In this pre-award bid protest matter, CliniComp challenges the Secretary's decision to make a sole source award of a contract to provide the VA's new EHR system to Cerner (the "Cerner Contract"), based upon the public interest exception to CICA.  *See generally* Compl. Cerner developed the current core EHR system for the United States Department of Defense ("DoD").  AR at 2.

CliniComp raises eight challenges to the Secretary's sole source award decision, namely, that: (1) the Secretary's Determination and Findings ("D&F") regarding the Cerner Contract, dated June 1, 2017, fails to comply with Federal Acquisition Regulations ("FAR") § 1.704; (2) the Secretary cannot rely upon the public interest exception to CICA to award the Cerner Contract under FAR § 6.302-7(b); (3) the Secretary cannot rely upon the public interest exception to CICA to award the Cerner Contract,  because the VA failed to engage in advance planning; (4) the Secretary's award decision is a brand-name justification; (5) the Secretary's award decision is arbitrary and capricious; (6) the Secretary improperly failed to consider cost in making the award decision; (7) the Secretary's award decision violates FAR § 34.005-1, because the Cerner Contract involves a major system; and (8) the Secretary failed to comply with the obligation to timely notify Congress of the award of the Cerner Contract, as required under 41 U.S.C. § 3304(a)(7)(B).  Pl. MJAR at 13-39.  As relief, CliniComp requests that the Court enjoin

---

[1] The facts recited in this Memorandum Opinion and Order are taken from CliniComp's complaint ("Compl."); CliniComp's motion for preliminary and permanent injunctions ("Pl. Mot."); CliniComp's memorandum of points and authorities in support of its motion for preliminary and permanent injunctions ("Pl. Mem."); the administrative record ("AR"); CliniComp's motion for judgment on the administrative record ("Pl. MJAR"); CliniComp's response and opposition to the government's and Cerner's respective cross-motions for judgment on the administrative record and motions to dismiss, and reply in support of its motion for judgment on the administrative record ("Pl. Resp."); and the Oral Argument Transcript, dated October 2, 2017, ("Oral Arg. Tr.").

the Secretary from awarding the Cerner Contract.  *See* Pl. Mem. at 33; Pl. MJAR at 39-40; Pl. Resp. at 29-30; *see generally* Pl. Mot.

### 1.    The VA's Efforts To Improve EHR Interoperability

As background, the VA and the DoD provide medical services to an overlapping patient population of service members and veterans.  *See* AR at 2.  These two government agencies have attempted to make their respective EHR systems interoperable for almost twenty years.  *Id.* at 24-32, 2134-35.  To date, this ongoing effort has achieved mixed results.  *Id.* at 15-61, 348-82.

In April 2017, the VA issued two requests for information from providers of EHR systems to help inform the VA's efforts to improve the interoperability of the EHR systems for the VA and the DoD.  *Id.* at 1197-215, 1820-38.  The VA also engaged a private auditor, Grant Thornton, to assess the market's ability to meet the VA's needs.  *Id.* at 233.  A May 17, 2017, Grant Thornton report found that the best option for the VA to accomplish the goal of improving interoperability with the DoD would depend upon the agency's own evaluation of the benefits and risks of modernizing its existing EHR system—the Veterans Health Information Systems and Technology Architecture, known as VistA—or selecting another commercially-available system.  *Id.* at 233.

Ultimately, the VA concluded that continuing to modernize its existing EHR system, or selecting a different commercial EHR system, would "result in the VA having to develop and maintain an increasingly complex technical architecture without providing seamless care."  *Id.* at 3, 2142.  And so, the Secretary decided to issue a solicitation directly to Cerner for the acquisition of the EHR system currently being used by DoD for deployment and transition across the VA.  *Id.* at 5, 2135.

Cerner currently serves as a sub-contractor under the DoD's EHR contract, and the company provides software and cybersecurity services to the DoD.  *Id.* at 2.  The DoD's contract is based upon Cerner Millennium, a commercially-available EHR product provided by Cerner.  *Id.*

### 2.    The Secretary's Determination & Findings

On June 1, 2017, the Secretary issued Determination & Findings regarding his decision to award the Cerner Contract.  *Id.* at 5.  In the D&F, the Secretary states that it is in the public

interest to directly solicit a sole source contract to Cerner to achieve a single common EHR system with the DoD. *Id.* at 1-5, 436. A "single common system" is one which "will be technically implemented in a way to enable adoption of common workflows, cybersecurity architecture, order sets, and terminology . . . that results in seamless care regardless of whether a patient . . . receives care at a VA or DoD facility." *Id.* at 436.

Specifically, the D&F identifies the public interest to be accomplished by the award of the Cerner Contract as four-fold: (1) "providing seamless, high-quality, integrated care and benefits;" (2) "improving patient safety;" (3) "facilitat[ing] the transition of active duty military members to VA;" and (4) "improv[ing veterans'] timely access to the highest quality of care in a way never before experienced." *Id.* at 1-2. With regards to providing seamless health care at the VA, the D&F states that "[a] Veteran's complete and accurate health record in a single common system is critical to providing seamless, high-quality, [and] integrated care and benefits." *Id.* With regards to improving patient safety, the D&F further states that "[c]ommon workflows, common cybersecurity architecture, and terminology based on national standards, along with a patient portal that transitions with the patient from active duty to Veteran status, will result in improved medical outcomes, improved patient safety, and a consistent patient-physician relationship." *Id.* at 3.

The D&F addresses facilitating the transition of active duty service members to the VA and states that, a single common system will "facilitate the transition of active duty military members to VA," because "[r]ecords residing in a single common system will eliminate the reliance on complex clinical interfaces or manual data entry between DoD and VA." *Id.* at 2. Lastly, with regards to improving timely access to health care, the D&F also states that having a single common system will provide "faster disability determinations because the complete record will already be in a common system." *Id.* at 3.

In addition, the D&F also identifies various other benefits that would result from the VA's adoption of the EHR system employed by the DoD. *Id.* at 2-3. For example, the D&F states that having the VA replicate the DoD's existing EHR system will allow the VA to avoid repeating mistakes and capitalize on the DoD's investments. *Id.* at 3. The D&F also states that having a single common system between the VA and the DoD will avoid having the VA "develop [or] maintain an increasingly complex" EHR system. *Id.* In addition, the D&F states

that having the VA and the DoD on a single EHR system will improve the ability of health analysts to recognize trends among service members and veterans which may be unique to this patient population. *Id.*

The D&F also addresses the benefit of the VA contracting directly with Cerner. *Id.* at 2-4. In this regard, the D&F states that:

> [The] VA can take advantage of standard commercial practice by contracting directly with Cerner as the prime contractor. During VA's due diligence in preparing for EHR modernization, there was a consistent message from healthcare providers that a close working relationship with their EHR provider was a critical success factor. Cerner's core business, as with many large commercial EHR vendors, is integrating its product suite into a customer's environment. As the prime contractor and EHR software developer, Cerner is best positioned to not only lead software implementation, but also to conduct a robust review of VA clinical processes for quality improvement and business transformation. Moreover, since the core software has been developed and can be modified by Cerner, and DoD's data is hosted by Cerner, by contracting directly with Cerner, VA will avoid additional cost and inefficiencies by not having a third party as the prime contractor. This direct relationship with Cerner will also enable VA to accelerate the development and implementation of seamless health care for the nation's Veterans and likely hasten the adoption of national standards for EHR systems.

*Id.* at 3-4.

On June 26, 2017, the VA approved an acquisition plan for a new, comprehensive, and VA-wide electronic heath records system with Cerner at its core. *Id.* at 2131-49; *see also id.* at 5. The D&F states that:

> The contract will . . . address all EHR functions supporting clinical care including revenue cycle, in-patient, ambulatory, as well as home care, ancillaries, and specialties to include dental. The contract will also address non-clinical core functional requirements, which may include inventory management/supply chain capabilities.

AR at 5; *see also id.* at 2146-47.

In addition, the Cerner Contract will require that Cerner provide these services to approximately 1,600 VA health care sites located through-out the United States. AR at 1. To that end, the Cerner Contract is estimated to cost more than $[***] billion over a ten year period. *Id.* at 2135-36. The Cerner Contract will be implemented in 48 phases, which will include site visits, user training, and onsite support. *Id.* at 2138-39.

### 3.    CliniComp's EHR Experience

Lastly, CliniComp has had more than three-decades of management experience with EHR systems.  Compl. Ex. 10 at 1.  In 2009, CliniComp was selected by the DOD to be the inpatient clinical documentation provider for the Military Health System.  *Id*.  Currently, CliniComp provides EHR system software to 56 DoD military facilities worldwide.  *Id*. at 2-3; *see also* Oral Arg. Tr. at 15:20-16:5.  CliniComp also provides EHR system software to 44 VA health care facilities located throughout the United States.  Compl. Ex. 10. at 2; *see also* Oral Arg. Tr. at 15:20-16:5.

### B.    Procedural Background

CliniComp commenced this pre-award bid protest action on August 18, 2017.  *See generally* Compl.  On August 18, 2017, CliniComp filed a motion for preliminary and permanent injunctions and a memorandum of points and authorities in support of its motion for preliminary and permanent injunctions.  *See generally* Pl. Mot.; Pl. Mem.

On August 21, 2017, Cerner filed an unopposed motion to intervene in this matter.  *See generally* Mot. to Intervene.  On August 22, 2017, the Court held an initial telephonic status conference, during which CliniComp agreed to hold its motion for preliminary and permanent injunctions in abeyance pending the resolution of the merits of this case.  Status Conference Tr. at 8:5-18, 18:21-19:4.  On August 22, 2017, the Court issued an Order granting Cerner's motion to intervene and setting the briefing schedule for the parties' cross-motions for judgment on the administrative record.  *See generally* Scheduling Order, Aug. 22, 2017.  On August 23, 2017, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On August 30, 2017, the government filed the administrative record.  *See generally* AR.  On September 11, 2017, CliniComp filed a motion for judgment on the administrative record.  *See generally* Pl. MJAR.  On September 18, 2017, the government filed a motion to dismiss and cross-motion for judgment on the administrative record and response to CliniComp's motion for judgment on the administrative record.  *See generally* Def. XMJAR.  On September 18, 2017, Cerner filed a cross-motion for judgment on the administrative record, opposition to CliniComp's motion for judgment on the administrative record and motion to dismiss.  *See generally* Int. XMJAR.  On September 22, 2017, CliniComp filed a response and opposition to the government's and Cerner's respective cross-motions for judgment on the administrative

record and motions to dismiss, and a reply in support of its motion for judgment on the administrative record. *See generally* Pl. Resp.  On September 27, 2017, the government filed a reply to CliniComp's response to its motion to dismiss and cross-motion for judgment on the administrative record. *See generally* Def. Reply.  On September 27, 2017, Cerner filed a reply in support of its cross-motion for judgment on the administrative record and motion to dismiss. *See generally* Int. Reply.

On September 22, 2017, CliniComp filed a motion to strike the declarations of Kyle R. Jefcoat and Charles Safran, M.D. and related attachments, which Cerner filed in support of its motion to dismiss, and certain citations contained in the government's motion to dismiss and cross-motion for judgment on the administrative record. *See* Pl. Mot. to Strike at 1-2.  On September 26, 2017, CliniComp filed a motion to amend its motion to strike. *See* Mot. to Amend. at 1 n.1.  On September 27, 2017, Cerner filed a response and opposition to CliniComp's motion to strike. *See generally* Int. Resp.  On September 28, 2017, the government filed a response and opposition to CliniComp's motion to strike. *See generally* Def. Resp.

On October 2, 2017, the Court held oral argument in this matter.[2]  On October 4, 2017, Cerner filed a motion for leave to file a supplemental brief to provide record citations pertaining to certain factual matters raised during oral argument. *See generally* Int. Mot to Supp.  On October 6, 2017, the government filed a response to Cerner's motion for leave to file a supplemental brief. *See generally* Def. Resp. to Mot. to Supp.  On October 6, 2017, CliniComp filed an opposition to Cerner's motion for leave to file a supplemental brief and motion for leave to file a supplemental brief. *See generally* Pl. Mot. to Supp.  On October 10, 2017, Cerner filed a response and opposition to CliniComp's motion for leave to file a supplemental brief. *See generally* Int. Resp. to Pl. Mot. to Supp.  On October 12, 2017, the government filed a response

---

[2] On September 30, 2017, counsel for CliniComp sent an email to the Court that courtesy copied counsel for the government and Cerner and notified the Court of certain additional authority to support CliniComp's motion for judgment on the administrative record.  On September 30, 2017, counsel for the government sent an email to the Court that courtesy copied all counsel and provided the Court with a corrected copy of one of the cases identified in CliniComp's September 30, 2017 email.  The Court observes that the Court's Rules expressly require that any request for a Court order be made by motion. *See* RCFC 7(b).

and opposition to CliniComp's motion for leave to file a supplemental brief. *See generally* Def. Resp. to Pl. Mot. to Supp.

These matters having been fully briefed, the Court addresses the pending motions.

## III.    LEGAL STANDARDS

### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that: "when a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa,* 238 F.3d at 1332-33).  "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa,* 238 F.3d at 1333).  In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  "The [C]ourt should not substitute its judgment for that of a procuring agency." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of

9

applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As long as there is "'a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).  But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B.    Standing And Bid Protests

Standing is a threshold issue which implicates the Court's subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  And so, if a plaintiff cannot establish standing, the Court is without jurisdiction to render a decision on the merits of a claim. *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002).

Under the Tucker Act, the Court has jurisdiction over "an action by an interested party objecting . . . to an alleged violation of a statute or regulation with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In evaluating who qualifies as an interested party with standing to bring a bid protest claim, the Court looks to the definition of "interested party" provided in CICA. *Myers*, 275 F.3d at 1370 (quoting *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)); *see* 31 U.S.C. § 3551(2).  And so, to have standing, a plaintiff must show that: "'it [(1)] is . . . an actual or prospective bidder and [(2)] . . . has a direct economic interest' in the procurement or proposed procurement." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (alterations original) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)); *see also* 31 U.S.C. § 3551(2).

In determining the second prong of standing—whether a plaintiff has a "direct economic interest" in the procurement—the Court generally applies the "substantial chance test," and inquires as to whether the plaintiff would have had a substantial chance of winning the contract, but for the alleged error in the procurement. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013). The Federal Circuit has made clear that the "substantial chance" test applies in bid protests involving challenges to sole source awards. *Myers*, 275 F.3d at 1370; *see also Digitalis*, 664 F.3d at 1385 ("We see no reason to limit [the substantial chance test] to competitive procurements."); *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001) ("When a party contends that the procurement procedure in a sole-source case involved a violation of a statute, regulation, or procedure, it must establish prejudice by showing that it would have had a substantial chance of receiving the award."). In such cases, the Court inquires as to whether the plaintiff could have competed for the contract at issue, if the procurement process were competitive. *Myers* at 275 F.3d at 1370. And so, while a plaintiff need not show that it would have received the award in a competition, a plaintiff must show that it would have been a qualified bidder or offeror to establish standing. *Id*. at 1370-71.

The Federal Circuit has also held that in certain pre-award bid protest matters involving a challenge to the terms of a solicitation, the Court may apply a different test to determine direct economic interest, namely, whether the plaintiff has a "non-trivial competitive injury which can be addressed by judicial review." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009). This standard may apply when circumstances provide insufficient facts to determine whether a plaintiff had a substantial chance of an award. *Id.* at 1361. But, as the Federal Circuit recognized in *Orion*, the "non-trivial competitive injury" test applies when there is a challenge to a solicitation before the award. *Orion*, 704 F.3d at 1348-49. And so, this test does not necessarily apply to all pre-award bid protests. *Id.*

## C.       Injunctive Relief, RCFC 65

In bid protest matters, the Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2); *see also* RCFC 65. But, "'a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (quoting 11A C. Writ, A. Miller, M.

Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed 1995)); *Intel Corp. v. ULSI Sys. Tech., Inc*., 995 F.2d 1566, 1568 (Fed. Cir. 1993) (citation omitted) (noting that the award of "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."); *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) (citation omitted) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

In deciding whether to grant injunctive relief, the Federal Circuit has directed that the Court consider four factors: (1) whether "the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citation omitted); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *OAO Corp. v. United States,* 49 Fed. Cl. 478, 480 (2001).

"Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). In addition, the Federal Circuit has held that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief, given the weight or lack of it assigned to the other factors, to justify the denial" of a motion for a preliminary injunction. *Id*. And so, this Court has held that a "plaintiff that has not actually succeeded [upon] the merits of its claim cannot prevail [upon a] motion for injunctive relief." *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005) (citation omitted).

### D.      Judgment On The Administrative Record And Supplementing The Record

RCFC 52.1 generally limits the Court's review of an agency's procurement decision to the administrative record. *Cf. Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record

already in existence . . . . '" (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973))).  Unlike a summary judgment motion brought pursuant to RCFC 56, the existence of genuine issues of material fact does not preclude judgment upon the administrative record under RCFC 52.1.  *See* RCFC 56; *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011).  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

The Federal Circuit has also held in *Axiom Resource Management*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013).  In *Axiom*, the Federal Circuit cited to the Supreme Court's decision in *Camp v. Pitts*, which held that "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp*, 411 U.S. at 142).  This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (internal quotation marks omitted) (quoting *Murakami v. United States*, 46 Fed. Cl. 731 (2000)).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *Id.* at 672.  And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument." *Id*.

### E.    CICA And The Public Interest Exception

Lastly, the Competition in Contracting Act generally requires procuring agencies to engage in full and open competition.  41 U.S.C. § 3301(a).  There are, however, seven exceptions to this requirement that permit federal agencies to engage in "other than competitive procedures."  41 U.S.C. § 3304(a).

Particularly relevant to this dispute, the public interest exception under CICA provides that:

> (a) WHEN NONCOMPETITIVE PROCEDURES MAY BE USED.—An executive agency may use procedures other than competitive procedures only when—
>
> . . . .
>
> > (7) the head of the executive agency (who may not delegate the authority under this paragraph)–
> >
> > > (A) determines that it is necessary in the public interest to use procedures other than competitive procedures in the particular procurement concerned; and
> > >
> > > (B) notifies Congress in writing of that determination not less than 30 days before the award of the contract.

41 U.S.C. § 3304(a)(7).

This Court has recognized that that judicial review of an agency head's use of the public interest exception must also include an examination of whether the agency head has complied with the requirements of the FAR. *See Spherix, Inc. v. United States*, 58 Fed. Cl. 351, 356 (2003); *see also Sikorsky Aircraft Corp.*, B-403471, B-403471.3, 2010 U.S. Comp. Gen. LEXIS 310, at *9-10 (Comp. Gen. Nov. 5, 2010). In this regard, FAR § 6.302-7 requires the agency head to issue a D&F that separately complies with FAR Part 1.7. *See* 48 C.F.R. § 6.302-7(c); *see also* 48 C.F.R. § 806.302-7(c).

Specifically, FAR § 1.704 sets forth the requirements for the substance and form of the Determination and Findings and requires that:

> Each D&F shall set forth enough facts and circumstances to clearly and convincingly justify the specific determination made. As a minimum, each D&F shall include, in the prescribed agency format, the following information:
>
> > (a) Identification of the agency and of the contracting activity and specific identifications of the document as a Determination and Findings.
> >
> > (b) Nature and/or description of the action being approved.
> >
> > (c) Citation of the appropriate statute and/or regulation upon which the D&F is based.
> >
> > (d) Findings that detail the particular circumstances, facts, or reasoning essential to support the determination. Necessary supporting documentation shall be obtained from appropriate requirements and technical personnel.

(e) A determination, based on the findings, that the proposed action is
    justified under the applicable statute or regulation.

(f) Expiration date of the D&F, if required (see 1.706(b)).

(g) The signature of the official authorized to sign the D&F (see 1.706)
    and the date signed.

48 C.F.R. § 1.704 (2017).

      While the Court does not second guess the agency's determination of what constitutes the public interest, the Court must confirm that the D&F clearly and convincingly justifies the agency head's decision to invoke the public interest exception. *Sikorsky Aircraft Corp.*, 2010 U.S. Comp. Gen. LEXIS 310, at *10 (denying a protest because the claims amounted to "the protester's mere disagreement with the [agency]'s positions."); 48 C.F.R. § 1.704. And so, the Court will look to the D&F—and also to other evidence contained in the administrative record—to find support for the agency head's decision. *Spherix, Inc.*, 58 Fed. Cl. at 517 (". . . the clear and convincing justification found in the Administrative Record is the exclusive basis of the court's holding . . . ."); 48 C.F.R. § 1.704(d).

## IV.    LEGAL ANALYSIS

      The government and Cerner have moved to dismiss this challenge to the Secretary's decision to directly solicit a sole source contract from Cerner to provide the VA's new electronic health records system, upon the ground that CliniComp is not a qualified bidder with standing to pursue this matter. *See generally* Def. XMJAR; Int. XMJAR. CliniComp counters in its opposition to the defendants' motions that it has standing to bring this matter, because CliniComp is a prospective offeror and the VA has deprived CliniComp of the opportunity to compete for the Cerner Contract. Pl. Resp. at 5-9.

      The parties have also filed cross-motions for judgment on the administrative record on the issue of whether the Secretary's sole source award decision was reasonable and in accordance with CICA, the FAR, and other applicable laws, pursuant to RCFC 52.1. *See generally* Pl. MJAR; Def. XMJAR; Int. XMJAR. In this regard, CliniComp argues that the Secretary's decision was irrational and unlawful because: (1) the Secretary's Determination and Findings regarding the Cerner Contract fails to comply with FAR § 1.704; (2) the Secretary cannot rely upon the public interest exception to CICA to award the Cerner Contract under FAR § 6.302-7(b); (3) the Secretary cannot rely upon the public interest exception to CICA to award

the Cerner Contract, because the VA failed to engage in advance planning; (4) the Secretary's award decision is a brand-name justification; (5) the Secretary's award decision is arbitrary and capricious; (6) the Secretary improperly failed to consider cost in making the award decision; (7) the Secretary's award decision violates FAR § 34.005-1, because the Cerner Contract involves a major system; and (8) the Secretary failed to comply with the obligation to timely notify Congress of the award of the Cerner Contract, as required under 41 U.S.C. § 3304(a)(7)(B).  Pl. MJAR at 13-40.  The defendants counter that the Secretary's award decision was lawful, because the decision is clearly and convincingly justified in the Secretary's Determination and Findings and otherwise supported by the administrative record.  *See generally* Def. XMJAR at 23-46; Int. XMJAR at 4-41; Def. Reply at 6-20; Int. Reply at 1-19.

In addition, the parties have filed several other motions.  First, CliniComp has moved for preliminary and permanent injunctions to enjoin the Secretary from make the planned sole source award to Cerner, pursuant to RCFC 65.  *See generally* Pl. Mot.  CliniComp has also moved to strike two declarations, and related documents, filed in support of Cerner's motion to dismiss—and the citations to a link to CliniComp's corporate website and to congressional reports contained in the government's motion to dismiss and cross-motion for judgment on the administrative record—as well as a motion to amend the motion to strike.  *See generally* Pl. Mot. to Strike; *see also* Def. XMJAR at 21-22, 46.  Lastly, Cerner has moved for leave to a file supplemental brief in support of its motion to dismiss and CliniComp has moved for leave to file a supplemental brief in support of its cross-motion for judgment on the administrative record. *See generally* Int. Mot. to Supp.; Pl. Mot. to Supp.

For the reasons discussed below, the Court **GRANTS** CliniComp's motions to strike and to amend its motion to strike; **GRANTS** the government's and Cerner's respective motions to dismiss this matter for lack of subject-matter jurisdiction; **DENIES** as moot the parties' cross-motions for judgment upon the administrative record; **DENIES** CliniComp's motion for preliminary and permanent injunctions; and **DENIES** Cerner's and CliniComp's respective motions for leave to file supplemental briefs.

### A.    The Court Grants CliniComp's Motion To Strike

As an initial matter, the Court grants CliniComp's motion to strike.  In its motion to strike, CliniComp seeks to strike the declarations of Kyle R. Jefcoat and Charles Safran, M.D.,

and related documents, which Cerner has filed to support its motion to dismiss, upon the ground that these materials are extraneous to the administrative record. Pl. Mot. to Strike at 2. CliniComp also moves to strike references to its corporate website and to certain congressional reports contained in the government's motion to dismiss and cross-motion for judgment upon the administrative record for this same reason. *Id*.

CliniComp is correct in noting that, generally, RCFC 52.1 limits the Court's review of an agency's procurement decision to the administrative record, and the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co.*, 111 Fed. Cl. at 93. But, the Jefcoat and Safran declarations and the citation to CliniComp's website are relied upon by the defendants to support their respective motions to dismiss this matter for lack of subject-matter jurisdiction. *See* Def. Resp. to Mot. to Strike at 3-4; Int. Resp. to Mot. to Strike at 4-5; *see also* Def. XMJAR at 21-22; Int. XMJAR at 44-47. As the government correctly observes in its opposition to CliniComp's motion to strike, the Court may look to matters beyond the administrative record to resolve the question of whether CliniComp has standing. Def. Resp. to Mot. to Strike at 3; *see, e.g.*, *Digitalis*, 97 Fed. Cl. at 93. And so, the Court agrees with the defendants that the Court may consider these materials.

CliniComp is on somewhat firmer ground in objecting to the government's citation to two congressional reports that are not included in the administrative record to support the government's motion for judgment on the administrative record. The government appears to acknowledge that these reports address the merits of CliniComp's claim that the VA violated the notice obligations under 41 U.S.C. § 3304(a)(7)(B). Def. Resp. to Pl. Mot. to Strike at 4-5. Nonetheless, the government argues that the Court may consider this material because the government relies upon these reports to show that CliniComp has not been prejudiced by the VA's alleged statutory violation. *Id.* While the Court does not share the government's view that the subject congressional reports serve only to address the issue of prejudice, the Court acknowledges that the existence and contents of these congressional reports are matters of public record and not subject to reasonable dispute. *See* Fed. R. Evid. 201 (providing for judicial notice of adjudicative facts). And so, the Court may also consider this material.

The Court concludes, however, that the existing administrative record in this matter—and CliniComp's complaint—contain sufficient information for the Court to resolve the parties' pending motions to dismiss and cross-motions for judgment upon the administrative record. And so, for this reason, the Court **GRANTS** CliniComp's motion to strike the Jefcoat and Safran declarations, as well as the citations to CliniComp's website and to the congressional reports contained in the government's filings.

### B.      CliniComp Fails To Establish Standing

The Court also grants the defendants' motions to dismiss this matter for lack of subject-matter jurisdiction, because CliniComp has not established that it has standing to pursue this pre-award bid protest matter. RCFC 12(b)(1). In their motions to dismiss, the government and Cerner argue that that CliniComp lacks standing to bring this challenge to the Secretary's sole source award decision, because CliniComp is not a qualified bidder that could have competed for the contract to provide the VA's new electronic health records system. *See* Def. XMJAR at 18-23; Int. XMJAR at 42-47. For the reasons discussed below, the Court agrees.

It is well-established that standing is a threshold matter which implicates the jurisdiction of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And so, if CliniComp cannot establish standing, the Court must dismiss this matter for lack of subject-matter jurisdiction. *Id.*; *Myers*, 275 F.3d at 1369-70.

To establish standing, CliniComp must show two things: (1) that it is "an actual or prospective bidder or offeror" and (2) that it has a "direct economic interest [which] would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). In this case, there is no dispute that CliniComp is a prospective bidder for the contract in dispute. Pl. Mem. at 5-6; Def. XMJAR at 21-23; Int. XMJAR at 42-43 (arguing that, although CliniComp "claim[s] that [it] would have submitted a proposal if the procurement were not a sole source procurement," CliniComp still must show that it had a substantial chance of winning the contract). And so, the question presented here is whether CliniComp has a "direct economic interest" that would be affected by the award of the Cerner Contract. 31 U.S.C. § 3551(2); *Am. Fed. of Gov't. Employees*, 258 F.3d at 1302.

Generally, the Court assesses "direct economic interest" by inquiring whether, but for the alleged error, a plaintiff would have had a substantial chance of receiving the contract. *Orion*, 704 F.3d at 1349; *Myers*, 275 F.3d at 1370. In *Myers*, the Federal Circuit made clear that the "substantial chance test" applies in bid protests involving a challenge to a sole source award. *Myers*, 275 F.3d at 1370; *see also*, *Digitalis*, 664 F.3d at 1385 (holding that "[w]e see no reason to limit [the substantial chance] rule to competitive procurements.").

The Federal Circuit has also recognized that, in the context of a challenge to a sole source award, a plaintiff must show that it would have been able to compete for the contract—*i.e.*, that the bidder or offeror was qualified—to satisfy the substantial chance test. *Myers*, 275 F.3d at 1370-71; *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001). This standard is not high. "To have standing, the plaintiff need only establish that it 'could *compete* for the contract' if the bid process were made competitive." *Myers*, 275 F.3d at 1370 (emphasis added) (quoting *Impresa*, 238 F.3d at 1334). But, the mere fact that a protestor might have submitted a bid or offer, alone, is not sufficient to establish standing.[3] *Id.*

In light of these legal standards, the Court inquires here as to whether CliniComp could have competed for the Cerner Contract if the procurement process for that contract had been competitive, to determine whether CliniComp has standing. *Myers*, 275 F.3d at 1370-71; *see also Orion*, 704 F.3d at 1349. When applying this test to the facts of this case, the Court concludes that the answer to this question must be no for several reasons.

First, while it is undisputed that CliniComp is a long-time, incumbent provider of EHR systems, and that CliniComp has provided such services to the VA, the evidence before the Court shows that CliniComp could not have competed for the planned contract to provide the VA's new electronic health records system. Pl. Resp. at 8; *see also* Compl. at 1-3; Compl. Ex. 10 at 1-2. In that regard, the administrative record shows that cost of the VA's planned contract significantly exceeds the value of the government contracts that CliniComp has previously

---

[3] The Federal Circuit has held the Court may apply a different test to determine direct economic interest—namely, whether a plaintiff has a "non-trivial economic interest" in a particular government procurement—in certain pre-award bid protest matters involving a challenge to the terms of a solicitation. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009). But, the Federal Circuit has also recognized that the "non-trivial economic interest" test does not necessarily apply to all pre-award bid protests. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013).

performed.  Specifically, the administrative record shows that the subject contract is expected to cost $[***] billion, to be spent over a 10-year period.  AR at 2135.  While there is no dispute that CliniComp has successfully performed under government contracts to provide EHR services to the VA and DoD, CliniComp does not dispute that it has not performed a government contract valued at, or near, the multi-billion dollar value anticipated for the Cerner Contract.  Pl. Resp. at 8-9; Def. Mot. at 22-23.  And so, CliniComp has provided no evidence to show that it has experience performing under a government contract of comparable value to the contract at issue in this case.  Oral Arg. Tr. at 17:5-22.

CliniComp also fails to show that it has experience providing EHR services for the substantial number of facilities that will be covered by the VA's planned contract with Cerner. In this regard, the record evidence shows that the services to be provided under the Cerner Contract will cover approximately 1,600 VA health care sites located across all 50 states.  AR at 1.  The administrative record also reflects that, during the past three years, the VA and DoD have collectively treated more than 3.7 million patients at their respective health care facilities.  AR at 423.

By comparison, CliniComp represents that it provides EHR services for 44 VA health care facilities nationwide and 56 DoD medical treatment facilities and clinics worldwide. Compl. Ex. 10 at 1-2.  Although CliniComp does not indicate how many patients are treated at these particular facilities, it is reasonable for the Court to conclude that the number of patients treated at these 100 facilities would be significantly less than the millions of patients collectively treated by the VA and the DoD worldwide.

Lastly, the administrative record also makes clear that CliniComp has no comparable experience performing the comprehensive tasks required under the VA's planned contract with Cerner.  In this regard, the record evidence shows that the Cerner Contract will be a comprehensive, multi-year contract to revamp the VA's entire electronic health records system. AR 1-5, 2131-2149.  For example, the Secretary's D&F describes the Cerner Contract as an "acquisition of the [EHR] system being deployed by the [DoD] and related services for deployment and transition across the VA enterprise in a manner that meets VA needs, and which will enable seamless healthcare to Veterans and qualified beneficiaries."  AR at 1.

The Secretary's D&F also makes clear that Cerner will:

> provide the full scope of services, including integration, configuration, testing, deployment, hosting, organizational change management, training, and sustainment, and licenses necessary to deploy the DoD's EHR system in a manner that meets VA needs.

*Id.* at 5; *see also id.* at 2146 (noting that the awardee will "operate, repair, and maintain systems, applications, and [information technology] environments in support of the EHR and/or system components for production environments.").

Again, by comparison, CliniComp has not shown that it has any experience providing such comprehensive services. In response to the Court's question about CliniComp's experience performing under a contract of this nature during oral argument, CliniComp argued that it could compete for the Cerner Contract because "CliniComp provides [electronic] health record services to the VA and to the DoD presently." Oral Arg. Tr. at 17:7-9. But, CliniComp acknowledges in this litigation that its experience has involved providing in-patient EHR services at approximately 100 government facilities. *See* Compl. Ex. 10 at 1-2. It is undisputed that the Cerner Contract will require support of outpatient, as well as in-patient services, at more than ten times this number of facilities. *See* AR at 5, 2135-36, 2145-47.

While the Court agrees that CliniComp need not provide exhaustive proof of its capabilities to establish standing, CliniComp must at least show that it could compete for the Cerner Contract. Pl. Resp. at 9; *see Myers*, 275 F.3d at 1370-71. The evidence before the Court makes clear that CliniComp has not shown that CliniComp has the kind of experience that would enable it to compete for the work contemplated by the VA's planned contract with Cerner. And so, the Court must conclude that CliniComp lacks standing to bring this matter. *Myers*, 275 F.3d at 1370-71.

The Court is also not persuaded by CliniComp's argument that it has standing because CliniComp can offer an alternative solution that could meet the VA's needs. *See* Tr. at 20:9-25. Even if true, the question before the Court is not whether CliniComp could offer the VA an alternative solution. But, rather, whether CliniComp could compete for the contract that the Secretary has decided to award to Cerner. *Myers*, 275 F.3d at 1370 (quoting Impresa, 238 F.3d at 1334) ("To have standing, the plaintiff need only establish that it 'could compete for the contract' if the bid process were made competitive."). As discussed above, CliniComp has not

shown that it could compete for the Cerner Contract.  And so, CliniComp's argument misses the mark.

CliniComp's argument that it need not prove that it is a qualified bidder, because the requirements for the Cerner Contract are unknown, is similarly without merit.  Oral Arg. Tr. 23:19-28:13.  The administrative record contains ample evidence regarding the nature and scope of the Cerner Contract.  In particular, the D&F states that:

> The contract will . . . address all EHR functions supporting clinical care including revenue cycle, in-patient, ambulatory, as well as home care, ancillaries, and specialties to include dental.  The contract will also address non-clinical core functional requirements, which may include inventory management/supply chain capabilities.

AR at 5.  The acquisition plan for the contract also states that the Cerner Contract will be implemented in 48 phases, which will include site visits, user training, and onsite support.  *Id.* at 2138-39.  The acquisition plan also states that "[t]his acquisition, at a minimum, shall include the full scope of services and products necessary to deploy the DoD EHR solution in a manner that meets the needs of the VA from Cerner."  *Id.* at 2145.  The anticipated services include, among other things: "project management;" "planning;" "systems/software engineering;" "data management;" "architecture design and development;" and "business intelligence and data analytics."  *Id.*  And so, the administrative record shows that the requirements for the Cerner Contract are known and that the Cerner Contract calls for comprehensive EHR system services.

Given the weight of this evidence, CliniComp has simply not met its burden to establish standing.[4]  And so, the Court must dismiss this action for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

### C.     The Administrative Record Supports The Secretary's Decision

Because the Court finds that CliniComp lacks standing to challenge the Secretary's sole source award decision, the Court need not reach the merits of CliniComp's claims.  Nonetheless,

---

[4] Even if the Court applied the "non-trivial competitive injury" test that CliniComp proposes to determine standing, CliniComp fails to meet this standard, because it has not put forward sufficient information to show that it would be a qualified bidder for the VA's planned contract.  *See IHS Glob., Inc. v. United States*, 106 Fed. Cl. 734, 746 n.8, 746-47 (2012) (citing *Myers*, 275 F.3d at 1370-71) (requiring the protester to show that it is a qualified bidder under the non-trivial economic injury test); Def. XMJAR at 20 n.6.

the Court observes that the administrative record appears to support the Secretary's sole source award decision. And so, even if CliniComp could establish that it has standing to bring this action, CliniComp is not likely to prevail upon the merits of any of its claims.

In this regard, the administrative record shows that the Secretary's D&F complies with the requirements of FAR §§ 1.704 and 6.302-7. FAR § 1.704 requires that:

> Each D&F shall set forth enough facts and circumstances to clearly and convincingly justify the specific determination made. As a minimum, each D&F shall include, in the prescribed agency format, the following information:
>
> > (a) Identification of the agency and of the contracting activity and specific identifications of the document as a Determination and Findings.
> >
> > (b) Nature and/or description of the action being approved.
> >
> > (c) Citation of the appropriate statute and/or regulation upon which the D&F is based.
> >
> > (d) Findings that detail the particular circumstances, facts, or reasoning essential to support the determination. Necessary supporting documentation shall be obtained from appropriate requirements and technical personnel.
> >
> > (e) A determination, based on the findings, that the proposed action is justified under the applicable statute or regulation.
> >
> > (f) Expiration date of the D&F, if required (see 1.706(b)).
> >
> > (g) The signature of the official authorized to sign the D&F (see 1.706) and the date signed.

48 C.F.R. § 1.704.

A review of the Secretary's D&F makes clear that this document satisfies the aforementioned requirements with regards to form. The D&F identifies the VA as the relevant agency and also identifies that this document contains the Secretary's Determination and Findings. AR at 1. The D&F also contains a description of the award of the Cerner Contact, cites the appropriate statutes and VA regulations upon which the D&F is based, details the particular circumstances and facts essential to support the Secretary's award decision, and contains the Secretary's signature. *Id.* at 1-5.

The Secretary's D&F also appears to clearly and convincingly justify the Secretary's decision to pursue a single common EHR system with the DoD. Specifically, the D&F states that "[a] Veteran's complete and accurate health record in a single common system is critical to

providing seamless, high-quality, [and] integrated care and benefits . . . ." *Id.* at 1.  With regards
to improving patient safety, the D&F further states that "[c]ommon workflows, common
cybersecurity architecture, and terminology based on national standards, along with a patient
portal that transitions with the patient from active duty to Veteran status, will result in improved
medical outcomes, improved patient safety, and a consistent patient-physician relationship." *Id.*
at 3.

The D&F also states that a single common system will "facilitate the transition of active
duty military members to VA," because "[r]ecords residing in a single common system will
eliminate the reliance on complex clinical interfaces or manual data entry between DoD and
VA." *Id.* at 2.  In addition, the D&F states that having a single common system will provide
"faster disability determinations because the records will already be in a common system." *Id.* at
3.

The Court notes, however, that there is less evidence in the administrative record to
specifically support the Secretary's decision to award the subject contract to Cerner.  Pl. MJAR
14-18; *see generally* AR.  In this regard, the D&F states that:

> [The] VA can take advantage of standard commercial practice by contracting
> directly with Cerner as the prime contractor. . . . As the prime contractor and
> EHR software developer, Cerner is best positioned to not only lead software
> implementation, but also to conduct a robust review of VA clinical processes for
> quality improvement and business transformation.

AR at 3-4.  But, the administrative record does not provide any other information to explain *why*
the Secretary selected Cerner to perform this contract.  *See generally id.* at 230-347, 418-36,
733-1040, 1129-2149.[5]

---

[5] During oral argument, the government pointed to a February 2014 United States Government
Accountability Office ("GAO") report and the congressional testimony of several GAO officials as
evidence to support the Secretary's decision to award the contract at issue to Cerner.  Oral Arg. Tr. at
42:15-43:1.  But, a review of the GAO report cited by the government shows that this report provides a
summary of the VA's longstanding challenges in ensuring interoperability with DoD in connection with
the VA's EHR system and that this report does not specifically address the award to Cerner.  AR at 15-61.
The March 29, 2017 congressional testimony of the program executive officer for defense healthcare
management systems, which was also cited by the government during oral argument, also does not
specifically address the basis for the Secretary's decision to award the contract at issue to Cerner.  AR at
408-17.  In fact, the testimony makes no mention of Cerner's interoperability capabilities with regards to
the VA.  AR at 411.

Notwithstanding this concern, as discussed above, the evidence in this case demonstrates that CliniComp lacks standing to bring this action.  And so, for this reason, the Court **DENIES** as moot the parties' respective cross-motions for judgment on the administrative record.

### D.     CliniComp Is Not Entitled To Injunctive Relief

CliniComp has also moved for preliminary and permanent injunctions to enjoin the Secretary from making the planned sole source award to Cerner, pursuant to RCFC 65.  *See generally* Pl. Mot.  As discussed above, CliniComp has not established that the Court possesses subject-matter jurisdiction to consider this matter.  And so, the Court must also **DENY** CliniComp's request for injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005) (holding that a plaintiff that has not actually succeeded upon the merits of its claim cannot prevail upon a motion for injunctive relief.).

### E.     The Court Denies The Parties' Requests To File Supplemental Briefs

As a final matter, the Court denies CliniComp's and Cerner's belated requests to file supplemental briefs in this matter.  On October 4, 2017, Cerner filed a motion for leave to file a supplemental brief to provide additional record citations pertaining to certain factual matters raised during oral argument.  *See generally* Int. Mot. to Supp.  On October 6, 2017, CliniComp filed a consolidated opposition and response to Cerner's motion for leave to file a supplemental brief and motion for leave to file a supplemental brief.  *See generally* Pl. Mot. to Supp.

This Court has inherent power "to control the disposition of the causes on its docket with economy of time and effort."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (recognizing the right of courts to stay proceedings).  To that end, the Court, in consultation with the parties, established an expedited briefing schedule for the timely resolution of this pre-award bid protest dispute.  *See generally* Scheduling Order, August 22, 2017.  Following the completion of the briefing on the parties' motions to dismiss and cross-motions for judgment on the administrative record, the Court also scheduled oral argument to afford each party the opportunity to further address the issues to be resolved in this matter.  *See generally* Scheduling Order, Sept. 26, 2017.

The motions for leave to file supplemental briefs filed by Cerner and CliniComp have been submitted well beyond the conclusion of the briefing schedule for this matter and after all parties have presented their oral arguments.  Further briefing with regards to these matters would also serve to unnecessarily delay the resolution of this pre-award bid protest.  And so, for this

reason, the Court **DENIES** Cerner's motion for leave to file a supplemental brief and **DENIES** CliniComp's motion for leave to file a supplemental brief.

## V.      CONCLUSION

In sum, CliniComp has not met its burden to show that it has standing to pursue this pre-award bid protest dispute.  Rather, the record evidence shows that CliniComp could not compete for the VA's planned contract to provide the agency's new electronic health records system if the procurement process for that contract were competitive.  And so, the Court must dismiss this matter for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

Because CliniComp has not established standing, CliniComp similarly fails to establish that it is entitled to the injunctive relief that it seeks in this matter.  In addition, the Court strikes the Jefcoat and Safran declarations submitted in support of Cerner's motion to dismiss and certain citations contained in the government's motion to dismiss and cross-motion for judgment upon the administrative record, because the administrative record and CliniComp's complaint contain sufficient information for the Court to resolve the parties' pending motions.  Finally, the Court denies the belated requests by Cerner and CliniComp to file supplemental briefs in this matter, because supplemental briefing at this late stage would unnecessarily delay the resolution of this matter.

And so, for the foregoing reasons, the Court:

1.  **GRANTS** CliniComp's motions to strike and to amend its motion to strike;

2.  **GRANTS** the government's and Cerner's respective motions to dismiss this matter for lack of subject-matter jurisdiction;

3.  **DENIES** as moot the parties' respective cross-motions for judgment on the administrative record;

4.  **DENIES** CliniComp's motion for preliminary and permanent injunctions;

5.  **DENIES** Cerner's and CliniComp's respective motions for leave to file supplemental briefs; and

6.  **DISMISSES** the complaint.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on August 23, 2017.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **November 9, 2017**.

      **IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge